

FILE COPY

08 CIV 4392

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UMA THURMAN and KARUNA DREAM, INC.,

               *Plaintiffs*,

      -against-

LANCÔME PARFUNS ET BEAUTE & CIE,

               *Defendant*.
-------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

       Plaintiffs Uma Thurman and Karuna Dream, Inc., by their attorneys, Greenberg Glusker Fields Claman & Machtinger LLP and Judd Burstein, P.C., complaining of the Defendant Lancôme Parfuns et Beaute & Cie, allege as follows:

## JURISDICTION AND VENUE

       1.     This Court has subject matter jurisdiction in this case pursuant to 15 U.S.C. § 1125 and 28 U.S.C. § 1332.

       2.     Venue lies in this District pursuant to 28 U.S.C. § 1391(a)(3).

       3.     This Court has personal jurisdiction over the Defendant pursuant to N.Y. CPLR §§ 301 and 302.

## PARTIES

       4.     Plaintiff Uma Thurman ("Thurman") is a citizen of the State of New York and is a well known motion picture actress.

       5.     Plaintiff Karuna Dream, Inc. ("Karuna") is a corporation organized under the laws of the State of New York. It is owned by Thurman. Karuna administers certain rights in Thurman's name and likeness, and lends Thurman's services in motion pictures and other endeavors. (Thurman and Karuna are collectively referred to herein as "Plaintiffs").

6.      Defendant Lancôme Parfuns et Beaute & Cie ("Lancôme" or "Defendant") is a French corporation doing business in New York City and throughout the world as a manufacturer and vendor of perfumes and other cosmetic products.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7.      On or about April 17, 2000, Lancôme and Karuna entered into a written agreement (the "License Agreement"). A true and accurate copy of the License Agreement is annexed hereto as Exhibit A and incorporated herein by reference. The License Agreement provided that, for specified payments, Karuna granted Lancôme the exclusive right, for a limited period of time, to use Thurman's name and likeness and specified services of Thurman, in advertising and promoting Lancôme's products.

8.      Acting pursuant to the License Agreement, Lancôme used Thurman's likeness in advertising and promoting the sale of its products and also permitted numerous other companies throughout the world ("Permitted Users") to use Thurman's name and likeness in advertising and promoting their sale of Lancôme products, both wholesale and retail, in stores and online. To facilitate such use, Lancôme made available to many Permitted Users advertising and promotional materials for the sale of Lancôme products, featuring Thurman's photograph. Having retailers and others throughout the world make widespread use of Thurman's name and likeness in advertising and promoting the sale of Lancôme products provided an extremely valuable benefit to Lancôme, increasing its worldwide sales and enhancing its prestige, stature and bargaining power.

9.      The limited period of time during which the License Agreement permitted the use of Thurman's name and likeness in advertising and promoting Lancôme's products expired on September 15, 2004, in Europe and December 31, 2004, in the rest of the world (the "Expiration

Dates"). The License Agreement required that, on the Expiration Dates, Lancôme cease all use of Thurman's name and likeness and that Lancôme give written notice to all Permitted Users to cease the use of Thurman's name and likeness in advertising or promoting the sale of Lancôme products. So long as Lancôme gave the contractually required notice, it was not required to sue any Permitted Users who received such notice but disobeyed it.

10.    Giving such notices to all Permitted Users was critical to Plaintiffs and was an essential obligation of Lancôme's under the License Agreement, since the certain result of Lancôme's failure to give such notices would be the continued and unauthorized use by Permitted Users of Thurman's likeness in selling Lancôme products throughout the world, thereby creating a significant and undeserved benefit for Lancôme and causing other companies to refrain from seeking to license Thurman's name, likeness or services to advertise or promote what they offered for sale.

11.    Karuna and Thurman have done all things required of them under the License Agreement and are in no manner or respect in breach thereof.

12.    Lancôme has materially breached the License Agreement in at least two respects. **First**, since the Expiration Dates, Lancôme has continued, without right or authority from Plaintiffs, to disseminate advertisements for Lancôme products using Thurman's photograph.

13.    **Second**, Lancôme failed to give the essential and contractually required notice to the Permitted Users throughout the world that, on the Expiration Dates, they must cease using Thurman's name and likeness in advertising or promoting the sale of Lancôme products. As a result of Lancôme's failure to give such notices, Permitted Users throughout the world have continued, since the Expiration Dates, to use Thurman's likeness to advertise and promote the sale of Lancôme products, doing so without any right or authority from Plaintiffs.

3

14.    As was clearly foreseeable when the License Agreement was made, this worldwide unauthorized use of Thurman's name and likeness after the Expiration Dates significantly diminished their value because, *inter alia*, other potential licensors of Thurman's name, likeness and/or services after the Expiration Dates were placed under the false impression that Thurman remained under contract with Lancôme.    Moreover, the worldwide and unauthorized use of Thurman's name and likeness for years after the Expiration Dates significantly diluted the value of Thurman's name and likeness for advertising or promotional purposes.

## FIRST CLAIM FOR RELIEF

### (Lanham Act Violation)

15.    Plaintiffs repeat and reallege all allegations set forth in the preceding paragraphs as if fully set forth herein.

16.    By reason of its conduct as alleged above, Defendant created a false and misleading representation of fact, likely to cause confusion or mistake and to deceive the public as to the continued affiliation, connection and association of Thurman with Lancôme and Lancôme's products, and as to Thurman's apparent sponsorship and approval of Lancôme's products.

17.    By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5 million, and then trebled pursuant to 15 U.S.C. § 1117(b).

18.    In addition, the Court should award Plaintiffs their attorneys' fees and costs, pursuant to 15 U.S.C. §1117(a).

4

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

19.     Plaintiffs repeat and reallege all allegations set forth in the preceding paragraphs as if fully set forth herein.

20.     By reasons of the foregoing, Defendant has breached the License Agreement.

21.     As a result, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5 million.

22.      In addition, pursuant to the License Agreement, Plaintiffs are entitled to recover their attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Contract)

23.     Plaintiffs repeat and reallege all allegations set forth in the preceding paragraphs as if fully set forth herein.

24.     Beginning on September 15, 2004, in Europe and December 31, 2004, in the rest of the world, and continuing to the present, Lancôme has, without any consent or authority from Plaintiffs, received and accepted the benefit of very valuable rights of Plaintiffs, including the right to allow retailers, wholesalers and others throughout the world to use Thurman's name and likeness in promoting and advertising the sale of Lancôme products. This conduct by Defendant created an implied obligation on Lancôme's part to pay Plaintiffs the reasonable value of such rights.

25.     Lancôme has refused to make such payment in material breach of its implied obligation.

26.    By reason thereof, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5 million.

### FOURTH CLAIM FOR RELIEF

### (Violation of N.Y. Civil Rights Law § 51)

27.    Plaintiffs repeat and reallege all allegations set forth in the preceding paragraphs as if fully set forth herein.

28.    By reason of its conduct as alleged above, Defendant violated N.Y. Civil Rights Law § 50, and Thurman is entitled under N.Y. Civil Rights Law § 51 to recover compensatory damages as proven at trial, but in no event less than $5 million, as well as punitive damages as determined at trial.

### FIFTH CLAIM FOR RELIEF

### (Violation of N.Y. General Business Law § 360- l)

29.    Plaintiffs repeat and reallege all allegations set forth in the preceding paragraphs as if fully set forth herein.

30.    By reason of its conduct as alleged above, Defendant violated N.Y. General Business Law § 360- l, and Plaintiffs are entitled to an injunction enjoining Defendant's further dilution and improper use of Thurman's name and likeness.

### SIXTH CLAIM FOR RELIEF

### (Violation of N.Y. General Business Law § 133)

31.    Plaintiffs repeat and reallege all allegations set forth in the preceding paragraphs as if fully set forth herein.

32.    By reason of its conduct as alleged above, Defendant violated N.Y. General Business Law § 133 and is thus guilty of a misdemeanor.  Plaintiffs are entitled to an injunction enjoining Defendant's further dilution and improper use of Thurman's name and likeness.

**WHEREFORE**, Plaintiffs demand Judgment as follows:

A.    On Plaintiffs' First Claim for Relief: (1) Plaintiffs' actual damages, as proven at trial, but in no event less than $5,000,000, and then trebled, (2) Plaintiffs' attorneys' fees, and (3) Plaintiffs' costs.

B.    On Plaintiffs' Second Claim for Relief: (1) Plaintiffs' actual damages, as proven at trial, but in no event less than $5,000,000, (2) Plaintiffs' attorneys' fees, and (3) Plaintiffs' costs.

C.    On Plaintiffs' Third Claim for Relief: (1) Plaintiffs' actual damages, as proven at trial, but in no event less than $5,000,000, and (2) Plaintiffs' costs.

D.    On Plaintiffs' Fourth Claim for Relief: (1) Plaintiffs' actual damages, as proven at trial, but in no event less than $5,000,000, (2) punitive damages, and (3) Plaintiffs' costs.

E.    On Plaintiffs' Fifth and Sixth Claims for Relief: an injunction enjoining Defendant's further dilution and improper use of Thurman's name and likeness.

Dated:        New York, New York
              May 9, 2008

                                        BERTRAM FIELDS, ESQ.
                                        GREENBURG GLUSKER FIELDS
                                        CLAMAN & MACHTINGER LLP
                                        1900 Avenue of the Stars
                                        Los Angeles, California 90067
                                        (310) 201-7484

                                        JUDD BURSTEIN, P.C.

                                        By _____
                                        Judd Burstein (JB-9585)
                                        1790 Broadway, Suite 1501
                                        New York, New York 10019
                                        (212) 974-2400

                                        *Attorneys for Plaintiffs*

8

# EXHIBIT A

LANCÔME PARFUMS ET BEAUTE & CIE
29, rue du Faubourg Saint Honoré
75009 - PARIS

April 17, 2000

Karuna Dream, Inc.
f/s/o Ms. Uma Thurman
c/o Creative Artists Agency
9830 Wilshire Blvd
Beverly Hills, California 90212-1825

Gentlepersons:

This letter constitutes a valid and binding agreement between you and Lancôme Parfuns Et Beaute & Cie. (hereinafter referred to as "Lancôme") with respect to your providing the services of Ms. Uma Thurman ("Thurman") to Lancôme as one of the spokespersons for the Lancôme brands in connection with the marketing of Lancôme and products sold under trademarks owned or controlled by Lancôme, excluding anti-perspirants, deodorants, or feminine hygiene products (hereinafter collectively referred to as the "Products").

## I. NATURE OF SERVICES

1. Creative and Media.

   a. Lancôme hereby engages you and you agree to furnish the services of Thurman (the "services") to Lancôme as a performer and participant in the production of materials advertising and promoting Lancôme and its Products in all forms of visual media, electronic or otherwise, subject to the exclusions set forth below.  Such media shall be without limitation and shall include, but not be limited to, television (free-TV, basic cable, premium, pay-per-view, and closed circuit), consumer and trade print, magazines, newspapers, point of purchase, cinema, theaters, mailers and mailing inserts, Internet, interactive and multimedia programming, video for in-store use, video trailers, outdoor, collateral, catalogs, direct mail, internal company materials, and public relations/press interview kits (hereinafter collectively referred to as the "materials").  Notwithstanding the foregoing, materials may not be used in theatres and cinemas within the United States or Canada and may not be used on packaging (but free standing print materials may accompany packaging or be inserted in packaging).

b. Thurman will also render public relations services consisting of interviews (either in person or by telephone, whichever Lancôme prefers) with major journalists and publications, e.g., Vogue and Elle and press conferences with pre-prepared interviews. Her public relations work will be done under the supervision of R. Garlock and Jérome Bartau.

c. Notwithstanding the foregoing, however, Lancôme agrees as follows:

(1) Thurman will not be required to make any appearances in department stores, speak dialog in any commercial, or participate in any event other than publicity events when a new product or advertising campaign in which Thurman appears is launched.

(2) Lancôme will itself publish and broadcast materials for no more than three products (new or existing) per year for which Thurman will be requested to render services. Materials for products introduced in previous years may be used in subsequent years and not count against as a "new" product for the then current year, i.e., the count is cumulative. Notwithstanding the foregoing, no more than four products per country may be advertised in any one year during the initial term of this agreement and no more than six during either of the one-year option periods, if exercised. The maximum number in the Run-Off Period will be the maximum number permitted in the immediately preceding year. Lancôme cannot guarantee that retailers will not use materials for more than the permitted number of products herein. Should such event occur and it is brought to Lancôme's attention, Lancôme will use its best efforts to cause the retailer to discontinue such use. The retailer's failure to do so will not, however, constitute a breach of this agreement. Under no circumstances shall Lancôme be obliged to file suit or any other legal proceedings against any retailer on account of unauthorized use.

(3) Other than the limitation on the number of products imposed in paragraph I.1.c.(2) hereof, there will be no limit regarding specific print media used or the frequency of use in such print media.

(4) With regard to commercials, Lancôme will produce no more than one commercial per year with unlimited edits for shorter or longer versions (as defined in the Screen Actors Guild –

"SAG" – Commercials Contract) or versions necessary for local usage in a given country, e.g., language, local scenes, etc., provided that such additional versions do not constitute additional commercials pursuant to the SAG Commercials Contract. Nothing herein, however, shall prohibit the production of dealer or co-op commercials, which commercial versions shall not be regarded as "new" commercials hereunder. In connection with lead-ins and tags, Lancôme agrees that it will not insert Thurman footage into the middle of a commercial but only as a bookend on either the beginning or end of a commercial.

(5) Commercials produced in previous years may be used in subsequent years and not count against the production count for the then current year, i.e., the count is cumulative. Notwithstanding the foregoing, Lancôme agrees that no more than two (2) commercials and edited versions thereof will be broadcast in any country in any one year.

(6) After the first year use of any commercial, Lancôme has the right to produce another commercial for a product advertised to replace the previous commercial produced for that product (the purpose being to allow Lancôme to update old creative). Such production will be in addition to the one new commercial production per year permitted herein.

(7) In the event Lancôme determines that it needs to produce and use the commercial permitted during the second year early, it shall be permitted to do so provided such commercial is not produced prior to March 2001.

2.  Creative Approval.

While it is Lancôme's desire to make Thurman as comfortable as possible with the creative in which Thurman appears and to consult with Thurman regarding the creative, you and Thurman agree that final approval of all creative remains with Lancôme, in its sole discretion, and that Thurman will follow and accept Lancôme's reasonable decisions and instructions in that regard.

3. Scheduling.

   a. It is of the essence to the agreement that Thurman be available as already booked for the beginning of May 2000 for a production in and around the New York City metropolitan area and at the press launch for a new perfume tentatively scheduled in Europe for the 8th and 9th of June, 2000. Thereafter, you and Lancôme will appoint liaison to keep one another informed of Thurman's schedule and Lancôme's production needs, working together to find mutually acceptable production days.

   b. Whenever possible, Lancôme will schedule shoots in and around the New York metropolitan area, but Thurman must be willing to travel if Lancôme believes other locations in the United States, Canada, or Western Europe are best for production of creative. All other locations shall be subject to Thurman's approval, which approval shall be in her sole discretion.

   c. If Thurman is required to travel to locations beyond the New York metropolitan area solely at the request of Lancôme and Thurman is not at such location for other personal or professional reasons, Lancôme will pay for her travel and the travel for her child (and any additional children that she may have), nanny, and husband (first class air and ground transportation, first class hotel accommodations, and reasonable first class living expenses) during any days that Thurman is required by Lancôme to travel or be on location.

   d. Thurman will use her best efforts to be available as requested by Lancôme, including being available on weekends and off-days during movie and television production, subject always to her bona fide need for adequate rest and her prior professional commitments. The liaison appointed by you will keep Lancôme informed of Thurman's commitments on a monthly basis listing her commitments for the forthcoming sixty-day period. Whenever possible, Lancôme will provide you with not less than ten (10) business days' advance notice as to times, dates, places, description and anticipated duration of the services to be provided. If Lancôme requests Thurman's services on less than ten (10) business days' notice, you agree to use your reasonable good faith to cause Thurman to comply with Lancôme's request. In any event, you agree to respond to Lancôme whether Thurman is or is not available on dates Lancôme has requested within five (5) business days following Lancôme's request. If Thurman commits to perform services on any days requested pursuant hereto (a "Confirmed Booking"), you agree that Thurman may not cancel such

4

commitment without Lancôme's prior approval (other than for a force majeure or bona-fide illness or disability), which approval may be withheld at Lancôme's sole discretion. Should Thurman cancel without Lancôme's approval (other than for a force majeure or bona-fide illness or disability), such cancellation will be deemed a material breach of this agreement and you agree that in the event of such breach you will be responsible for all non-consequential damages and expenses suffered by Lancôme on account of such cancellation. For such purposes hereunder, Lancôme will designate a person at Lancôme to act as a liaison between you and Lancôme (the "Artist's Liaison"). Such person may be changed from time to time at Lancôme's election. Lancôme understands that there will be "blackout periods" during which Thurman will be unable to provide services. Those blackout periods are listed in Schedule 1 attached hereto.

4.  Days of Service

    a.  Lancôme will have the right to require Thurman's services hereunder for up to fifteen (15) days in the aggregate in each year of the term hereof. For purposes of services hereunder, "years" shall begin on the first day Thurman renders services in the production of advertising materials.

    b.  For purposes of calculating the number of days of services rendered by Thurman hereunder, all days upon which Thurman renders services shall be considered full days except as follows:

        (1)  Travel days and rest days on account of travel (if such rest days are requested by Thurman and not imposed by Lancôme) shall not count as days of service.

        (2)  Occasional telephonic interviews with publications lasting less than one (1) hour in duration will not count as days of service.

        (3)  Consultation with Thurman regarding the creative shall not constitute days of service.

        (4)  In the event Lancôme invites Thurman to non-working social events and Thurman chooses, in her sole discretion, to attend, such events will not count against the number of days of services.

5

    (5) Any day where the time devoted is less than four (4) hours, exclusive of travel, e.g., short production days, wardrobe fittings, make up sessions, and pre-production meetings, will count as one-half (1/2) day of service.

    (6) Hold days or rest days imposed by Lancôme (as opposed to requested by Thurman) when Thurman is on location but not required to perform any services will count as half days.

    (7) Provided Lancôme cancels more than ten (10) days notice prior to a Confirmed Booking, such cancellation by Lancôme shall not count against the days of service permitted herein. Other than on account of a force majeure, should Lancôme cancel on less than ten (10) days, such cancellation shall count as a half day of services unless Thurman has begun her travel to a location outside the New York Metropolitan area and Lancôme cancels en route, in which event such cancellation shall count as one (1) full day of service. As used in this paragraph I.4.a.(7), a "force majeure" shall include cancellation by key creative personnel beyond the control of Lancôme, e.g., the director or photographer.

    (8) A "day" shall not exceed twelve (12) hours in length, exclusive of travel but inclusive of reasonable breaks and meals on set. At the end of any production day, Thurman shall have a least twelve (12) hours rest. The twelve (12) hours will be measured from drop-off at her accommodations following the production day and pickup the next day.

    (9) Half-days (including "hold" days on location) are capped at four (4) per year, provided, however, that the half-day penalty imposed for Confirmed Bookings cancelled by Lancôme (as provided in paragraph I.4.a.(7)) will not count against the cap.

c. Any unused days per year may not be carried forward into the next year.

d. Notwithstanding paragraph I.4.b.(5) above, in the event Thurman is required by Lancôme to travel to a location outside the New York City metropolitan area to render services hereunder, at least one (1) full production day shall be credited against the fifteen (15) days permitted hereunder even if less than four (4) hours of actual service time is rendered by Thurman on said production day(s).

6

5. Physical Appearance.

Throughout the term hereof, Thurman will:

a. Maintain her current weight, plus or minus 10%, subject to a grace period of seven (7) days at any time she is over the limit, excluding pregnancy.

b. Consult with Lancôme regarding any change in her hair style and color and other features of her physiognomy and physical appearance, recognizing that any material change in her physiognomy or physical appearance is to be avoided.

c. Take care of her hands and skin and use reasonable efforts to prevent them from becoming suntanned.

d. Notwithstanding the foregoing, nothing shall prevent Thurman from altering her appearance in a manner in violation of the foregoing if such alteration is required in connection with her performing services as a performer in a motion picture, television program, or play. Such alterations must, however, be of a temporary nature and be reversed within a reasonable time following her completion of services in any such motion picture, television program, or play. In the event any role Thurman plans to perform as an actress in a motion picture, television program, or play may require Thurman to materially alter her appearance, you agree to notify Lancôme of such change and to consult with Lancôme regarding such change prior to making such change. It is understood and agreed that the decision to alter her appearance for such purposes and in the non-permanent manner described above shall be her sole decision.

6. Production Personnel.

While Lancôme will consult with Thurman, Lancôme will have the final choice, in its sole discretion, of photographers, directors, make-up artists, hair-stylist, stylist, and other key creative personnel.

7. Biography.

Lancôme agrees that Thurman will have a right to approve any biography of Thurman used by Lancôme in connection with Lancôme's rights authorized hereunder, which approval will not be unreasonably withheld.

## II. TERM AND USE

1. For purposes of this agreement (other than paragraph I.4. hereof), the initial term shall be keyed to Lancôme's use of materials produced hereunder in two (2) territories comprised, respectively, of Europe and the balance of the world (the "Territory" or "Territories") as follows:

   a. For purposes of use in Europe (the "European Territory"), the initial term of use will begin on the first day a print advertising or commercial utilizing Thurman's services is published or broadcast in Europe (written notice of which shall promptly be given to you by Lancôme) and end two (2) years thereafter. Notwithstanding the foregoing, the initial term of use pursuant to this paragraph II.1.a. will end no later than December 31, 2002. "Europe" as used herein shall refer to Western and Eastern Europe, Turkey, and Israel.

   b. For the balance of the world (the "Non-European Territory"), the initial term of use will begin on the first day a print advertising or commercial utilizing Thurman's services is published or broadcast in the United States (written notice of which shall promptly be given to you by Lancôme) and end two (2) years thereafter. Notwithstanding the foregoing, the initial term of use pursuant to this paragraph II.1.b. will end no later than March 30, 2003.

2. Lancôme will thereafter have two (2) successive options to extend the periods of use for one year each for both Territories, exercised at Lancôme's discretion. Lancôme will advise you no later than thirty (30) days preceding the end of the initial term or first option period for the European Territory or the Non-European Territory, whichever first occurs, whether it wishes to exercise an option. The exercise of the options shall be in Lancôme's sole judgement. The initial term and any options exercised are hereinafter collectively referred to as the "term."

3. At the end of the term, Lancôme shall have a run-off period (the "Run-Off Period") of one year for each of the Territories. The Run-Off Period is guaranteed and is not an option. Since product launch differs in each Territory, i.e., the introduction in Europe will occur approximately six months prior to introduction elsewhere, the applicable run-off periods will differ. In no event, however, will any run-off period go beyond one year following the end of the term in the applicable Territory. Notwithstanding the foregoing, in no event will use extend worldwide beyond December 31, 2005 (assuming the contract goes for its entire term).

8

4. During the term hereof, including the Run-Off Period, the materials produced and services rendered hereunder may be used throughout the world subject to all of the limitations set forth herein.

## III. COMPENSATION

1. Lancôme agrees to pay to you or cause you to be paid and you agree to accept, in consideration of all services rendered by Thurman and the use of the results thereof and all rights granted by you and Thurman to Lancôme, the following (all payments hereunder shall be in U.S. dollars):

   a. Initial term (guaranteed): Five Million Eight Hundred Thousand dollars ($5,800,000).

   b. Each option period, if exercised: Three Million One Hundred Thousand dollars ($3,100,000).

   c. Run-Off Period (guaranteed): Two-thirds of the previous year's annual compensation. Such payment will cover all use during the Run-Off Period in both of the Territories.

   d. The above compensation is <u>inclusive</u> of agents and managers fees.

2. Payment Schedule.

   a. The guaranteed compensation for the initial term will be payable in seven installments, the first in the amount of $500,000 within ten days following the first day of your rendition of services hereunder, $470,000 payable on September 15, 2000, and the remaining five installments in the amount of $966,000 each payable on January 15, 2001, May 15, 2001, September 15, 2001, January 15, 2002, and May 15, 2002.

   b. During the option periods, if exercised, the guarantees will be paid in three installments each year, the first in the amount of $1,034,000 payable within thirty (30) days following commencement of the applicable option period and the remaining two installments of $1,033,000 due on the fifteenth day of fourth and eighth month thereafter.

9



    c. Compensation for the Run-Off Period will be payable in two (2) installments, one-half (1/2) within thirty (30) days following the commencement of the Run-Off Period and the second half six (6) months thereafter.

    d. With respect to the production and use of the commercials produced hereunder, all compensation required under the applicable union agreements of the Screen Actors Guild and/or the American Federation of Radio and Television Artists ("Union Code(s)") shall be calculated at two (2) times minimum scale and shall be credited against the compensation paid during the year in question. If the scale payments pursuant to this paragraph III.2.d. with respect to any year of the term hereof exceeds any year's compensation provided herein, Lancôme will promptly pay any such excess to you in accordance with the applicable Union Code.

3. Pension and Health Fund Allocation.

Lancôme will be responsible for all payments to the Screen Actors Guild Pension and Health Plan required in connection with the rendition of services by Thurman in the production of commercials. For the purpose of this agreement, you, Thurman, and Lancôme agree that Thurman's services in connection with the production and use of the commercials permitted pursuant to this agreement shall be valued at Two Hundred Fifty Thousand ($250,000) per commercial produced, regardless of the number of versions and that such value is the fair market value for her services in commercials. Such value shall be applied against the guaranteed compensation provided in paragraph III.1.a. hereof. And you and Thurman further agrees that the balance of the compensation is in consideration for services, rights, and benefits outside the scope of the Commercials Code. At all times, you and Thurman agree to support the aforesaid allocation should it be challenged.

4. Deductions Required by Law.

Payments to be made hereunder will be subject to such deductions as are required by law. You will be responsible for all payments to be made to any agent with respect to Thurman's services hereunder. You acknowledge that the rendering of services hereunder will not entitle Thurman to employee benefits as Lancôme's employee or an employee of

10

Lancôme with respect to workers compensation, disability benefits, health, medical or life insurance programs, pension, profit-sharing or other employee-benefit plans or programs maintained by Lancôme, except only as required pursuant to the Union Codes.

## IV. EXCLUSIVITY AND ENDORSEMENT

1. You warrant, represent and agree that throughout the term hereof, including the Run-Off Period, Thurman will not, other than for Lancôme, directly or indirectly, participate in or authorize use of her name, signature, photograph, voice, picture, likeness, or other indicia of her identity in any manner, in any part of the world, in connection with any commercial, advertisement, promotion, merchandising, publicity, endorsement, or other commercial exploitation, for any product, service, company, individual or entity engaged, directly or indirectly in the sales and marketing of cosmetics and beauty products or services or which, as a result of her association, would cast a harmful and adverse light on Lancôme and its products and services.

2. "Cosmetics and beauty products or services" as used in this paragraph shall mean products and services manufactured, distributed, advertised, offered for sale, or sold for use in cleansing, beautifying, altering, enhancing, improving or maintaining consumers' physiognomy and physical appearance, health and comfort. By way of example, but without limitation, such products and services include perfume, cologne, fragrances, mascara, lipstick, lip liner, foundation, eyeshadow, eyeliner, blush, powder, nail polish and remover, bath oil, soap, cleansing bars, balms, lotions, ointments, moisturizers, emoluments, exfoliates, depilatories, feminine hygiene products, razors and razor blades, toothpaste, tooth brushes or cleaners, combs, brushes, wigs, hair spray, hair dye, hair conditioner, shampoo, hair cutters, beauty parlors and spas, hair and nail salons, hairdressers, tanning salons, cosmetic surgery and augmentation, and dentistry. "Indirectly" as used in this paragraph shall mean parents, subsidiaries, divisions, or parts of companies, individuals or entities that sell or market cosmetics or beauty products and who are, as a result generally perceived as a cosmetics company or associated with cosmetics and beauty products and services. By way of example, but without limitation, such parents, subsidiaries, divisions, or parts of companies would include Calvin Klein Jeans (since the company also sells cosmetics) and Michael Jordan Enterprises (since Michael Jordan's name has been licensed for a men's fragrance). Notwithstanding the foregoing, however, nothing contained in this agreement shall be construed to prevent Thurman from:

11

a. Performing in any motion picture or audio visual work, play or radio or television program (other than an X-rated production or an unrated production in the nature of an X-rated production) and authorizing such motion picture or audio visual work, play, radio or television program to be advertised, publicized, promoted, merchandised, and exploited in any media (including posters which advertise and promote a motion picture); provided, however, that Thurman agrees not to appear with regard to any such motion picture or audio visual work, play, radio or television program in lead-ins or lead-outs advertising any products or services competitive with those of Lancôme.

b. Allowing her name, signature, photograph, voice, picture, likeness, or other indicia of her identity to be used as part of the editorial content of any newspaper or magazines or where such editorial content or your photograph as it appears in such newspaper or magazine is an advertisement for the sale of any such newspaper or magazine.

c. Performing for or allowing her name, signature, photograph, voice, picture, likeness, or other indicia of her identity to be used in connection with any charitable effort provided such effort is not in connection with a charity whose association with any company or product competitive with Lancôme is identified as part of the name of such charitable effort. Without limiting the foregoing, it is understood and agreed that Lancôme may disapprove, in its sole discretion, any charitable effort for charities that take positions or espouse beliefs contrary to the business interests of Lancôme or the cosmetics industry. Should Thurman do so unknowingly, such association shall not be deemed a breach of this agreement by Thurman provided she discontinues such association upon being made aware of such charity's contrary position or belief.

3. Notwithstanding the foregoing, Thurman will not, at any time during the term of this agreement, including the Run-Off Period, authorize the use of her picture or likeness where she is depicted nude or where nudity is apparent despite any clothing that may be worn, e.g., see-through clothing, in any media of any kind; provided, however, that this subparagraph shall not be deemed applicable to your rendition of services as an actress in any motion picture, play or television program or in the advertising thereof (other than an X-rated production or an unrated production in the nature of an X-rated production) or with regard to photography for magazines (other than Playboy, Penthouse, or similar "men's publications") where Thurman is nude but where she has covered

12

herself in an appropriate manner.

4. Thurman agrees that if, as part of any role she performs in a motion picture, play or television program, she is asked to handle or name a product or cosmetic in competition with those manufactured by Lancôme or to be associated with a company in competition with Lancôme, she will request that she not be required to do so. If her request is not granted, such use or association in a motion picture, play, or television program shall not constitute a breach of this agreement.

5. You warrant, represent and agree that at no time during the term hereof or for a period of two years thereafter, will you or Thurman disparage Lancôme, any of its products or services, any directors or employees of Lancôme Inc., or any of Lancôme's advertising, public relations, promotions, or marketing agencies or departments. Similarly, Lancôme warrants, represents and agrees that at no time during the term hereof or for a period of two years thereafter, will Lancôme disparage your or Thurman's association with Lancôme. Lancôme will also use its best efforts to ensure that its present and former directors and employees and its advertising, public relations, promotions, or marketing agencies will not disparage such association, it being understood that Lancôme's inability to do so, after use of such best efforts, will not constitute a breach of this agreement.

6. In the event Thurman are approached to provide services to any other company, person or entity for the purpose of commercializing, advertising, promoting, merchandising, publicizing, or endorsing any product or service (other than entertainment-related products or services), you agree to first notify Lancôme of such approach prior to Thurman agreeing to render such services. Upon such notice, you agree to consult with Lancôme regarding Lancôme's views of the adverse effect, if any, Lancôme feels Thurman's rendition of such services will have on the value of the services rendered by Thurman to Lancôme pursuant to this agreement. It is understood and agreed, however, that provided her rendition of such services is not in violation of paragraph IV.1. hereof, Lancôme will have no right to interfere with or prevent Thurman from rendering such services.

7. You agree that Lancôme may utilize Thurman's services to endorse Lancôme and its Products during the term and the Run-Off Period and in that connection Thurman has simultaneously executed the letter attached hereto as Schedule 2 and made a part hereof.

8. Thurman will at all times during the term of this agreement endeavor to use only Lancôme products for her cosmetic needs unless Lancôme does not manufacture or distribute a product or cosmetic needed by her. In

that connection, Lancôme will supply Thurman with free product for such personal use throughout the term hereof. Nothing herein shall be deemed to prohibit Thurman from using products or cosmetics manufactured or distributed by companies other than Lancôme where such use is (a) deemed preferable by her (which preference she will keep confidential to herself and not disclose publicly) or (b) required by the producer in connection with her performance in a motion picture, play or television program or (c) on account of products or cosmetics supplied by hotels where she stays (provided such use is non-public), or (d) on account of products or cosmetics used by spas or resorts at which she may take a beauty treatment.

9. You recognize Lancôme's concern that during the term hereof, including the Run-Off Period, Thurman not publicly handle any cosmetic products other than those manufactured and distributed by Lancôme. Therefore, Thurman agrees during such period to use reasonable efforts not to publicly handle any other cosmetic products.

10. If at any time during the term hereof, you or Thurman become aware of any third party (a "Third Party") that uses or threatens to use, in any manner without your authorization, Thurman's name, signature, photograph, voice, picture, likeness, or other indicia of her identity (or the name, signature, photograph, voice, picture, likeness, or other indicia of identity of a party other than Thurman in a manner which is likely to be confused with or taken to be Thurman) and such use would, if it had been authorized by Thurman, constitute a violation of the exclusivity provisions contained herein and you and Thurman elect not to take affirmative action to prevent such use or cause it to cease, including, without limitation, the prompt institution and vigorous prosecution of a legal action against the Third Party seeking an injunction prohibiting such use or threatened use, then, at Lancôme's option and sole expense, exercisable by written notice to you, Lancôme shall have the power of attorney to bring legal action in your and Thurman's name against such Third Party to enjoin such use and to seek damages suffered by it on account of such use. You and Thurman will cooperate with Lancôme and its representatives in connection with any such action, including appearing at depositions and trial. Any damages recovered in an action commenced by Lancôme hereunder shall be Lancôme's sole property, excluding any damages awarded or allocated to you or Thurman. Should any damages be allocated to you or Thurman, attorney's fees and court costs reasonably allocated to you and incurred by Lancôme will be deducted from any payments you receive. Any days devoted by Thurman regarding such actions will not count as days of service hereunder.

14

11. Without limiting the foregoing, you agree that Thurman will not, directly or indirectly, participate in or authorize use of her name, signature, photograph, voice, picture, likeness, or other indicia of her identity in any manner, in any part of the world, for feminine hygiene products or services, pet food, stomach or rectal medications, house cleaning products or services.

## V. USE OF NAME AND LIKENESS

1. During the term of this agreement, you hereby grant to Lancôme the right to use and to license the use of Thurman's performance, name, signature, photograph, picture, likeness, or other indicia of her identity in connection with the materials produced hereunder in such advertising, merchandising, publicizing, promotional and marketing medium as permitted pursuant to this agreement in connection with Lancôme and its products and trademarks. Lancôme will also have the right to use such materials in its and any of its subsidiaries or divisions annual reports and internal (non-public) materials, including L'Oreal and Cosmair.

2. Following termination of Lancôme's right to use Thurman's name, signature, photograph, picture, likeness, or other indicia of her identity hereunder, no materials produced hereunder shall be disseminated by Lancôme, it being understood, however, that the unauthorized use by others, including wholesalers and retailers, of materials theretofore disseminated by Lancôme shall not constitute a breach by Lancôme hereunder. Upon termination, Lancôme will notify all third parties previously authorized by Lancôme to use materials produced hereunder to terminate such use and will take reasonable steps to enforce the same if notified of an unauthorized use, but their failure to do so will not constitute a breach by Lancôme of this agreement. Nothing herein shall preclude or prejudice you or Thurman from proceeding against any third party using your name, signature, photograph, voice, picture, likeness, or other indicia of Thurman's identity in violation of this paragraph or of her individual rights in connection therewith. Under no circumstances shall Lancôme be obliged to file suit or any other legal proceedings against any retailer on account of unauthorized use.

15

3. You will have the right to use photography and other materials produced by Lancôme in Thurman's own portfolio for professional purposes. Such use, however, shall be subject to the rights that third parties may have in such photography and materials.

## VI. MISCELLANEOUS PROVISIONS

### 1. Services Unique

a. It is expressly understood and agreed that the services to be performed by Thurman and the rights and privileges granted to Lancôme hereunder are special, unique, extraordinary and impossible of replacement, giving them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law and that Thurman's failure or refusal to perform her obligations hereunder would cause irreparable harm or damage. Therefore, should Thurman fail or refuse to perform such obligations, you agree that Lancôme shall be entitled, in addition to all other rights and remedies Lancôme may have (including, but not limited to, Lancôme's right to refrain from making payments to you and Lancôme's right to recover from you an amount equal to any sums received by you from any third party, by reason of Thurman's violation of any provision of this agreement) to seek injunctive or other equitable relief against you and/or to prevent the continuance of such failure or refusal or to prevent her from performing services or granting rights to others in violation of this agreement.

b. You agree that your exclusive remedies for breach of this agreement by Lancôme during the term hereof shall be money damages and the withholding of Thurman's services. During the term hereof, including the Run-Off Period, you shall not have any right whatsoever to enjoin the distribution or exploitation by Lancôme of the materials produced hereunder.

### 2. Pay or Play

Lancôme shall not be required to utilize Thurman's services or the product of her services, it being understood that Lancôme's only obligation shall be to make the payments required pursuant to the provisions of paragraphs III. hereof.

16

3.  Union Membership

    a.  You warrant and represent that Thurman is or will become a member in good standing of any union or guild having jurisdiction over her services as rendered under this agreement. You shall be responsible for and shall reimburse Lancôme any expenses, fines or penalties incurred or paid by Lancôme as a result of your or her breach of the above undertaking; otherwise, Lancôme shall be entitled to deduct any such expenses, fines or penalties from payments otherwise due to you hereunder. Lancôme will bear any responsibilities for foreign unions that may have jurisdiction over Thurman's services or the use of the results thereof. .

    b.  Nothing contained herein shall constitute agreement by Lancôme to become a signatory to any union or guild having jurisdiction over Thurman's services as rendered under this agreement. Lancôme agrees, however, that all commercials produced by Lancôme hereunder will be produced through advertising agencies or production companies that are signatories to the various unions or guilds having jurisdiction over Thurman's services as rendered under this agreement.

4.  Indemnities

    a.  You and Thurman agree to indemnify and hold Lancôme and its directors, officers, employees, agents, assigns, distributors, and licensees (the "Indemnified Parties") harmless from and against any and third party all claims, damages, liabilities, costs and expenses, including reasonable counsel fees, which may be obtained against, imposed upon or suffered by the Indemnified Parties by reason of any breach by you or Thurman of any warranty, representation, covenant, or agreement made by you or Thurman herein.

    b.  Lancôme agrees to similarly indemnify you and Thurman and hold you and Thurman harmless from and against any and all third party claims, damages, liabilities, costs and expenses, including reasonable counsel fees, which may be obtained against, imposed upon, or suffered by you or Thurman by reason of Lancôme's breach of this agreement, the copy used in any materials produced hereunder whether or not such copy is attributable to Thurman, Lancôme's use of the advertising materials produced hereunder, or the products or services advertised therein or thereby.

    c.  The party claiming right of indemnification ("Indemnitee"), shall

17

promptly notify in writing the party from which indemnification is sought ("Indemnitor"), of any claim against the Indemnitee which might give rise to a claim against the Indemnitor under this agreement, stating the nature and basis of the claim and, if known, the amount thereof. If a legal action or proceeding is brought against the Indemnitee with respect to which the Indemnitor may have liability under this agreement, Indemnitor shall have the right, without prejudice to the Indemnitee's rights under this agreement, at the sole expense of the Indemnitor, to be represented by counsel of Indemnitor's own choosing (with whom counsel for the Indemnitee shall confer in connection with the defense or any such action or proceeding) and, to the extent that it shall wish, to assume the defense thereof with counsel approved by the Indemnitee, which approval will not be unreasonably withheld. After notice from the Indemnitor to the Indemnitee of the Indemnitor's election to so assume the defense, the Indemnitor shall not be liable to the Indemnitee for any fees of other counsel or any other expenses incurred by the Indemnitee, except where such expenses are incurred at the request of the Indemnitor in connection with the defense of any action or proceeding. The Indemnitee shall make available to the Indemnitor and Indemnitor's counsel, all materials relating to such action or proceeding and the parties shall cooperate with each other in defending against such action. The Indemnitee shall not make any settlement of any claims which might give rise to liability of the Indemnitor without the Indemnitor's prior written consent, which consent shall not be unreasonably withheld.

5. Ownership of Materials

    a. You acknowledge that neither you nor Thurman have any right, title or interest, and agree that neither you nor Thurman will claim any right, in or to the materials produced hereunder, or in or to any of the trademarks, service marks, trade names or copyrights of Lancôme or any advertising ideas, announcements, phrases, titles or words created by Lancôme or used in the materials produced hereunder.

    b. To the extent required under the applicable copyright laws regarding ownership of any materials produced hereunder or the content or use thereof, the product of Thurman's services hereunder will be considered works made for hire or, if not legally capable of being considered as such, then and in such event you and Thurman hereby assign to Lancôme any rights or title you or Thurman may have in or to such materials. Without limiting the foregoing, you and Thurman hereby waive any so-called "moral rights" or "droit morale" in connection with the use of the materials produced hereunder.

18

6. <u>Breach</u>

    a.  If either party hereto at any time commits a breach of a material provision of this agreement or at any time fails or refuses to fulfill its material obligations hereunder, then the non-breaching party may terminate this agreement forthwith, provided, however, that written notice of such breach must be served upon the breaching party, who shall thereupon have fifteen (15) days in which to cure such breach, if it is possible to do so, before the non-breaching party can effectively terminate this agreement.

    b.  Without limiting the foregoing, it is also expressly understood that the cure period shall not apply to breaches by you or Thurman of paragraphs IV. or VI.7. hereof.

    c.  Without limiting the foregoing, it is also expressly understood that the cure period shall not apply in the event of Thurman's refusal to commence performance for a Confirmed Booking in violation of this agreement (other than as may be due to Thurman's bona-fide illness, disability, or force majeure), or after having commenced performance, her discontinuance of such performance, except as may be due to her bonafide illness, disability, or force majeure. Without any prejudice to Lancôme's rights on account of such a breach, should Lancôme elect to waive a breach of this paragraph VI.6.c., you will nonetheless be obligated to pay Lancôme any out of pocket costs incurred by Lancôme as a result of such refusal or failure to perform, including insurance premiums and deductibles, if any.

7. <u>Behavior</u>

    a.  Notwithstanding anything herein to the contrary, you hereby acknowledge that Thurman's proper conduct and reputation are of the utmost importance to Lancôme and that such conduct and behavior must at all times be consistent with the dignity and high standards of Lancôme and must not derogate or otherwise disparage Lancôme. Therefore, Thurman must at all times conduct herself with due regard for public morals and decency. In the event she is charged with a felony or is convicted of any act involving moral turpitude during the term hereof and the effect of such breach is, in the reasonable judgment of Lancôme, of sufficient magnitude to require, for commercial reasons, the discontinuance of the use of the materials produced hereunder utilizing her services, then Lancôme, in its reasonable judgment, shall have the right to terminate this agreement forthwith. In such event, there shall be no further compensation

19

payable to you hereunder except with respect to any sums which may be due you for services then already rendered or for authorized expenses incurred by you or Thurman prior to the date of termination. The foregoing right shall be Lancôme's sole remedy in the event of your breach of this paragraph VI.7.a. and Lancôme agrees to discontinue use of any materials in which Thurman appears within sixty (60) days following Lancôme's termination of this agreement by reason of your or Thurman's breach of this paragraph VI.7.a.

b.  Nothing contained in paragraph VI.7.a. shall apply with respect to Thurman's rendition of services as an actress in a motion picture, play, or television program, provided such services are not otherwise in violation of paragraph IV. hereof.

8.  Force Majeure

a.  Except only as otherwise provided in this agreement, if for any reason, such as strikes, boycotts, war, acts of God, labor troubles, riots, delays of commercial carriers, restraints of public authority, or for any other reason, similar or dissimilar, beyond Thurman's reasonable control (herein defined as a "force majeure"), she is unable to render services as required by Lancôme during any period of the term hereof, such inability to perform shall not be considered a breach by you or Thurman of this agreement.

b.  Notwithstanding the foregoing, if by reason of a force majeure, Lancôme is unable to use and/or reuse the materials produced hereunder or Thurman shall be unable to provide services as requested by Lancôme during any period of the term hereof, then Lancôme shall have the right to extend the term hereof for an equivalent period, without any additional compensation to you. Without limiting the foregoing, in the event of a strike by the Screen Actors Guild or the American Federation of Television and Radio Artists, and Lancôme requests Thurman's services which she refuses to provide on account of such strike, the then current year of the term of this agreement shall be extended for a period equivalent to the duration of such refusal.

9. <u>Death</u>

In the event of Thurman's death during the term hereof, Lancôme shall have the right to either terminate this agreement or continue to use all materials in which she participated for the balance of the term or Run-Off Period, as Lancôme may elect, upon payment of the compensation provided herein to her executor or administrator, or such other party as may be appropriate.

10. <u>Disability</u>

a. If Lancôme should request and should Thurman fail to fulfill her obligations hereunder due to any illness, accident or other physical or mental impairment which renders her incapable of performing or unqualified to perform her services required under this agreement for a period in excess of sixty (60) days in the aggregate within any twelve (12) month period, then in Lancôme's discretion this agreement may be terminated. In the alternative, Lancôme shall have the right to extend the then current year of the term for a period of time not to exceed the period of such incapacity in order to utilize Thurman's services for the number of days authorized pursuant to paragraph I.4. hereof.

b. Notwithstanding the foregoing, pregnancy shall not be considered a disability hereunder and should Thurman become pregnant, Lancôme agrees to work around her schedule and condition. In the event of her pregnancy, Lancôme shall have the right to extend the then current year of the term for a period of time not to exceed sixty (60) days in order to utilize her services for the number of days authorized pursuant to paragraph I.4. hereof

11. <u>Rights Upon Breach</u>

In the event of a breach of this agreement by you or Thurman, in addition to any other legal remedies Lancôme may have, Lancôme shall have the right to seek injunctive or other equitable relief, and the exercise of such right shall not constitute a waiver of any other or additional rights at law or pursuant to the terms of this agreement which Lancôme may have against you or Thurman as a result of such breach.

12. <u>Warranties and Representations</u>

    a.   You represent, warrant, and agree that the execution, delivery and performance by you and Thurman of this agreement is fully within your and Thurman's power and is not in violation of any other commitments by you or Thurman and you and Thurman will not do or authorize to be done any act which will, in whole or in part, deprive Lancôme of its rights, privileges and benefits arising under or by reason of this agreement.

    b.   Lancôme warrants, represents and agrees that:

        (1)  it is qualified to do business in the State of New York and has all requisite power and authority, corporate and otherwise, to execute this agreement, and perform all of its obligations under this agreement; and

        (2)  the execution, delivery and performance by Lancôme of this agreement has been duly authorized by all necessary action, corporate or otherwise, and does not and will not (i) require any consent or approval of any stockholder(s), (ii) violate any provision of Lancôme's certificate of incorporation or by-laws or any law, rule, regulation, order, writ, judgment, injunction, determination or award applicable to Lancôme, or (iii) constitute a breach or default under any agreement or instrument to which Lancôme is a party or by which Lancôme may be bound or affected.

13. <u>Notices</u>

Service of all notices under this agreement shall be in writing and may be delivered in person by hand or sent by prepaid certified or registered mail (return receipt requested), overnight or express delivery, or telefax to you at the address hereinabove provided with a copy to:

    Ms. Uma Thurman
    c/o Creative Artists Agency
    9830 Wilshire Blvd
    Beverly Hills, California  90212-1825
    Attn: Mr. Bryan Lourd
    Telephone (310) 288-4545
    Telefax (310) 288-4090

with a copy to:

Special Artists Agency, Inc.
345 North Maple Drive
Suite 302
Beverly Hills, CA  90210
Attn: Ms. Liz Dalling
Telephone (310) 859-9688
Telefax (310) 859-1832

and to:

Armstrong Hirsch Jackoway Tyerman & Wertheimer
1888 Century Park East
18th Floor
Los Angeles, CA 90067
Attn: Barry L. Hirsch, Esq.
Telephone (310) 553-0305
Telefax (310) 553-5036

and to Lancôme at:

Lancôme Parfuns Et Beaute & Cie
40, Rue Kleber
92691 Levallois Perret CEDEX
PARIS
Attn: Mark Menesguen
Telephone (011-33-14) 964-7148
Telefax (011-33-14) 964-7906

with copies to:

Lancôme Parfuns Et Beaute & Cie
40, Rue Kleber
92691 Levallois Perret CEDEX
PARIS
Attn: Mr. Francis Mery
Telephone (011-33-14) 964-7052
Telefax (011-33-14) 964-7906

Linda Vogel, Esq.
Cosmair, Inc.
575 Fifth Avenue
New York, NY 10017
Telephone (212) 984-4208
Telefax: (212) 984-4946

Hall Dickler Kent Friedman & Wood LLP
909 Third Avenue
New York, New York 10012
Attn: Douglas J. Wood, Esq.
Telephone (212) 339-5400
Telefax (212) 935-3121

Any notice mailed via prepaid certified or registered mail (return receipt requested) shall be deemed to have been given three business days following the day it is mailed or, if sent by overnight delivery, telefax, on the next business day following the day it was delivered, or if delivered in person by hand, on the day it is delivered.

14. Waiver

The failure of a party to exercise any of its rights granted to such party upon the occurrence of any of the contingencies set forth in this agreement or its failure to insist upon strict adherence to any term of this agreement on any one occasion shall not be construed a waiver or deprive that party of the right thereafter to insist upon strict adherence to the terms and conditions of this agreement at a later date.

15. Entire Understanding

This agreement constitutes the entire understanding and agreement between you and Lancôme with respect to the subject matter of this agreement and supersedes all prior agreements, oral or otherwise. No waiver, modification or addition to this agreement shall be valid unless in writing and signed by the parties hereto.

16. Governing Law

This agreement shall be governed by and construed in accordance with the laws of the State of New York, USA pertaining to contracts made and performed entirely therein and except only as may be required pursuant to the Union Codes, you agree and consent that jurisdiction and venue of all matters relating to this agreement shall be vested exclusively in the

24

federal, state and local courts, as applicable, within the State of New York.

17.  Interviews, Advertising, and Publicity

a.  You agree that Thurman will not authorize or release materials
publicity, or give interviews which make reference to the details of her
engagement hereunder, the business operations and trade secrets of
Lancôme, or any of its principals, and its respective representatives,
assigns or licensees without Lancôme's prior written approval,
although she may comment favorably that she is associated with
Lancôme and use and endorse its Products.

b.  Lancôme agrees to consult with Thurman regarding any press releases
it publishes but Lancôme shall solely determine the content of such
releases.

c.  At all Lancôme functions attended by Thurman, she will use your best
efforts to promote and endorse Lancôme and its products.  At all other
times during the term hereof deemed appropriate by Thurman, she
will consider promoting and endorsing Lancôme and its products in
all public and professional appearances at which she participates or
may be present.  It is understood and agreed, however, that
Thurman's decision not to do so at non-Lancôme functions will not
constitute a breach of this agreement.

d.  It is specifically acknowledged that the compensation paid to you
hereunder will be held by all parties in strict confidence and shall not
be released publicly without the consent of all parties hereto or unless
ordered by a court or regulatory authority.

18.  Insurance

In the event Lancôme elects to procure production insurance or insurance
on Thurman's life or health to protect Lancôme's financial interests
herein, you agree to cause Thurman to submit to a physical examination
by a physician of her choosing satisfactory to the insurance company to
which Lancôme has applied for insurance coverage.  Thurman may also
elect to have her personal physician (if different from the examining
physician) present at her own expense.  The time devoted to any physical
examination will not count as a service day hereunder.

19. <u>Paragraph Headings</u>

Paragraph headings are for reference purposes only and are not intended to create substantive rights or obligations.

19. <u>Professional Rendition of Services</u>

Thurman agrees to render her services hereunder in accordance with the scripts or other materials which Lancôme furnishes to her for such purposes. Thurman agree to render her services in a competent and artistic manner to the best of her ability, and that all her services will be subject to Lancôme's approval, direction and control at all times, and she will promptly comply with whatever reasonable instructions, suggestions and recommendations Lancôme may give her in connection with the rendition of such services.

20. <u>Prorated Compensation</u>

In addition to such other rights Lancôme may have at law or in equity and without prejudice to any such rights, in the event of any early termination of this agreement as a result of a breach by you or Thurman or pursuant to paragraphs IV. or VI. hereof, Lancôme shall be entitled to a refund of any portion of the Total Guarantee paid, prorated to the effective date of termination. Any refund due Lancôme will be paid promptly by you.

21. <u>Assignment</u>

a.  This agreement may be assigned by Lancôme to any of its subsidiaries, divisions, or affiliates or to a company or other entity that may acquire ownership of the Products for which you rendered services hereunder, provided that no such assignment shall relieve Lancôme of Lancôme's obligations hereunder. "Affiliates" shall be defined as companies or entities, controlling, controlled by, or under common control with Lancôme, its successors or assigns.

b.  Lancôme may, at any time, engage the services of an advertising agency or production company selected by Lancôme to represent it in connection with this agreement and Lancome's performance of its obligations hereunder.  Nothing shall relieve Lancôme, however, of its obligations hereunder in the event of such engagement.

c.  You may not assign this agreement except to another loan-out corporation wholly owned and controlled by Thurman.

26

22. <u>Right to Legal Counsel</u>

You acknowledge that you hive retained legal counsel of your own choosing in connection with the negotiation and execution of this agreement or have knowingly waived your right to do so.

22. <u>Survival of Terms</u>

The warranties and representations, and the indemnity rights and other to each party to this agreement, shall survive the termination of this agreement.

22. <u>Enforceability of Terms</u>

If any provision of this agreement is invalid or unenforceable, that provision shall be deemed stricken from this agreement and the balance of this agreement shall remain in effect, and if any provision is inapplicable to any particular circumstance, it shall nevertheless remain applicable to all other circumstances.

22. <u>Thurman's Inducement Letter</u>

Attached hereto as Schedule 3 is an inducement letter signed by Thurman certifying Karuna Dream, Inc.'s authority from her to execute this agreement. Should you assign this agreement to any other loan-out corporation as authorized herein, Thurman must sign a similar inducement letter certifying such other loan-out corporation's authority.

Please confirm your acceptance of, and agreement to, the foregoing by affixing your signature in the place indicated below.

Very truly yours,

Lancôme Parfuns Et Beaute & Cie

By:_____

Marc Menesguen

27

ACCEPTED AND AGREED:

Karuna Dream, Inc.

By: _____

      Uma Thruman, its President

_____

      Federal I.D. Number

28

Schedule 1

Blackout Periods

1. The period commencing three (3) days before Thanksgiving Day and ending three (3) days thereafter.

2. The period commencing five (5) days before Christmas Eve and ending five (5) days after New Year's day.

3. The period commencing three (3) days before Easter Sunday and ending three (3) days thereafter.

4. On Thurman's birthday and one day before and after.

29

**Schedule 2**

**Ms. UMA THURMAN**
**c/o CREATIVE ARTISTS AGENCY**
**9830 WILSHIRE BLVD**
**BEVERLY HILLS, CALIFORNIA 90212-1825**

April 17, 2000

Lancôme Lancôme Parfuns Et Beaute & Cie
29, rue du Faubourg Saint Honoré
75009 - PARIS

Gentlemen:

Pursuant to a separate agreement ("Agreement"), you have retained my services in connection with the production of various materials in which I may deliver testimonials for various products and services of Lancôme Inc. (hereinafter referred to as the "Products").

I hereby certify to you that I endorse the products, prefer them to other competitive brands, and promise that I will continue to purchase and use Lancôme products for so long as you have the right to use the materials produced pursuant to the Agreement.

Nothing contained in this letter shall constitute an amendment or addition to the Agreement, the terms and conditions of which shall remain in full force and effect.

Very truly yours,

Uma Thurman

Witness:

30

Schedule 3

Ms. UMA THURMAN
c/o CREATIVE ARTISTS AGENCY
9830 WILSHIRE BLVD
BEVERLY HILLS, CALIFORNIA 90212-1825

April 17, 2000

Lancôme Lancôme Parfuns Et Beaute & Cie
29, rue du Faubourg Saint Honoré
75009 - PARIS

Gentlemen:

Reference is made to an Agreement dated April 12, 2000 between you and Karuna Dream, Inc.

In consideration of your entering into the Agreement with Karuna Dream, Inc., and in order to induce your execution thereof, I hereby confirm that I have read said Agreement and that I agree to perform all of the obligations and undertakings required of me thereunder and to abide by all the restrictions contained therein as they are applicable to me, regardless of whether Karuna Dream, Inc. continues throughout the term of the Agreement to be my employer in connection with such services.

I acknowledge that payment by you to Karuna Dream, Inc. as set forth in said Agreement shall fully discharge your obligations to me.

I warrant and represent that Karuna Dream, Inc. is authorized by me to contract for my services as set forth in said Agreement and represent that I am not obligated to any third parties in any manner that would interfere with my ability to perform as required under said Agreement.

Very truly yours,

_____

Uma Thurman

31